ISABELLA CAMPBELL, Respondent, v. WILLIAM C.
CAMPBELL, Appellant.

St. Louis Court of Appeals, February 15, 1898.

Divorce:  ABANDONMENT: INDIGNITIES.  In a suit by the wife for di-
vorce on the grounds of abandonment and indignities offered, *held*,
that the enforced absence of the husband, of which the wife was the
efficient cause, was not abandonment, and the evidence failed to
prove any of the indignities charged.

*Appeal from the Greene Circuit Court.*—Before HON. CHARLES J. WRIGHT, Special Judge.

REVERSED AND BILL DISMISSED.

*Delaney & Hamlin* for appellant.

To entitle plaintiff to a decree on the ground of indignities, the indignities must be frequent, and must be of such nature as to tend to the subversion of the family relations.   *Webb v. Webb,* 44 Mo. App. 229.

Failure to support up to the date of the alleged desertion is not established by the evidence.   It was the duty of the wife to live in the style and manner which the husband's means afforded, and to share his fortunes, and remain in his home, however humble, if it was the best he could provide.   *Castor v. Castor,* 63 Mo. App. 155; *Jones v. Jones,* 55 *Id.* 523; *Owen v. Owen,* 48 *Id.* 208; *Messenger v. Messenger,* 56 Mo. 329.

The decree can not be sustained on the ground of desertion, as the evidence shows the separation was not only with plaintiff's consent, but was the direct result of her own actions toward defendant.   *State v. Weber,* 48 Mo. App. 500; *Droege v. Droege,* 55 *Id.* 481; *Griesedieck v. Griesedieck,* 56 *Id.* 94; *Salorgue v. Salorgue,* 6 *Id.* 602; *Gilmer v. Gilmer,* 37 *Id.* 671; *Davis v. Davis,* 60 *Id.* 545.

While this court will have regard to the findings of the trial judge when it is not opposed to the evidence, yet, in divorce proceedings, it will look into the evidence and determine the merits of a particular case. *Scheirstien v. Scheirstien,* 68 Mo. App. 205.

*A. W. Lyon* for respondent.

Acts of cruelty need not be sufficient to endanger life in order to be ground for divorce.   *McCartin v.*

*McCartin*, 37 Mo. App. 471.    See, also, *Reed v. Reed*, 39 Mo. App. 473.

Appellate courts will defer largely to the findings of the trial judge in divorce proceedings as well as in equity cases, and will not reverse unless the decree is manifestly wrong, or clearly against the weight of the evidence.    *Miller v. Miller*, 14 Mo. App. 418; *King v. King*, 42 *Id.* 454; *Parker v. Roberts*, 116 Mo. 657.

BLAND, P. J.—The petition charged numerous indignities, mostly of a trivial nature, want of support and abandonment, and prayed for a decree of divorce and for the care and custody of two infant children born of the marriage.

The answer was a general denial.    There was an utter failure of proof of abandonment.    The evidence on the contrary tended to prove that it

DIVORCE:
abandonment:
indignities.

was through the wife's objections to the husband's accepting employment in Springfield, the city of their residence, and her unkind treatment of him, that he was compelled to leave their home and seek employment elsewhere, in order to earn the means of subsistance.    His departure was not with the intention of abandoning his wife; she was the prime cause of his leaving, and his departure was entirely to her liking, and he remained away because she forbade him to return.    The home was hers; held in her own right; to this home she would not consent to his return, not even to see his children.    His remaining away under this condition is not evidence of abandonment.    His absence was an enforced one, of which the plaintiff was the efficient cause, and she can not enforce, or even consent to the absence of her husband, call it abandonment, and procure a divorce on that account.    *Davis v. Davis*, 60 Mo. App. 545.    The evidence also fails to prove any of the indignities

charged.    The plaintiff's testimony tends to make out some of them, and as to these she is corroborated by her aunt Miss Ross, but the weight of the testimony is against these two witnesses.    The witnesses who were not of kin and who were disinterested without exception testified to the kind treatment of Campbell to his wife and to his devotion and attention to her, and to the fact that he supported her in as good style and as comfortable a manner as his means would permit. The opportunities of these witnesses were such that had Campbell neglected or mistreated his wife they would have observed it.    But by reason of the fact that Miss Ross has lived almost continuously ·in the Campbell family, it is insisted that her opportunities for noting the conduct of Campbell were much better than that of any of the other witnesses, and the greater weight should be given her testimony.    This contention would be of great force were it not for the other fact, which the testimony discloses, that she is biased and prejudiced against Campbell, and that in all probability it is she who stands between Campbell and his wife.    From the evidence it is clearly shown that Mrs. Campbell is a cultured and refined lady, and it is equally clear that Mr. Campbell is a sober, honest, industrious man, fond of his wife and attached to his children, and that nothing unusual, unless it be the interference of this maiden aunt, has occurred to mar their wedded bliss, except his struggle against poverty. His wife knew that he was a poor man when she married him; he did not attempt to conceal this from her, but frankly told her of his financial condition, and she testified that she knew he was a poor man and working for wages when they married.    The evidence discloses the fact that he had struggled hard to better his condition, but unfortunately without success.

No complaint was made by the wife of his treatment of her, until she fortunately came into possession of a home of her own in the city of Springfield and of $10,000 in notes and bonds and an allowance of $50 per month from her father. Then it was that the maiden aunt seems to have taken up her permanent abode with Mrs. Campbell and to have let loose her batteries of criticism and fault-finding against Campbell. In this house he was relegated to a servant's room as a sleeping apartment—out of employment; his wife says he was dressed in the cast off clothing of her father and his (Campbell's) brother, and yet she objected to his accepting employment from a Jew—a most shameful confession for a wife to make, with a good home, $10,000 in notes and bonds, and a monthly allowance of $50. It is true that the law imposes no legal obligation on her to support her husband from her separate means, but it is equally true that a decent respect for the father of her children should have prompted her to have spared her husband the humiliation of this public exposure of his poverty, where this testimony was not relevant to any issue in the case and was not called for by any question propounded to her.

While it is the duty of the husband to support the wife, it is equally the duty of the wife, when she has not means of her own, to live in the style and manner which the means of the husband affords. And when she has means of her own and chooses from such means to live in style beyond the means of her husband, she is not thereby clothed with the right to cast him off and deny him all marital rights and to deny him the privilege of visiting his children, as was done by the plaintiff in this case, and we are unable to agree with the learned judge who tried this case

that Mrs. Campbell is either an innocent or injured party.

Not the semblance of a cause for divorce is substantiated by the testimony in this case. It is the duty of the plaintiff to remove every obstacle that stands between her and a reconciliation to her husband, and to receive him back in her affections and to restore him to the bosom of his family, from which he has been wrongfully excluded. We are unable to find any serious misconduct on the part of Campbell. Poverty is not a sin, and has not been made a statutory cause for divorce, yet all that has been proven against Campbell is that he is poor, and the chief indignities alleged are failure to furnish a style and manner of living beyond his means. Though humiliated by poverty and forced to leave his family, the evidence shows that Campbell has been true to his manhood, true to his wife, and that adversity has not cooled his love for his wife or dampened his affections for his children. He should not be divorced or separated from them, and we reverse the judgment, and direct the lower court to dismiss the bill. All concur.